## Teamsters & Chauffeurs Federal
## Credit Union v. Gummo

*Keith O. Brenneman,* for plaintiff.
*Glenn R. Grell,* for defendant.

HESS, *J.,* July 30, 1992—In this case, the plaintiff credit union has brought an action against the administratrix of the estate of Marion K. Long, seeking to recover funds which were allegedly converted by the decedent. The complaint contends that the decedent wrongfully and intentionally converted $167,454.97 of the depositor's funds while she was employed as an office manager for the plaintiff. The thefts, according to the complaint, occurred between December 1980 and August 1985. The decedent died on January 26, 1989. Subsequent to her death, this suit was instituted. Preliminary objections were filed and have been briefed and argued.

Of the three preliminary objections briefed by the defendant, two may be quickly resolved. First, the defendant contends that where, as here, an action against an administratrix in which the administratrix is a resident of Dauphin County and the estate is administered in Dauphin County, the action is not properly brought in Cumberland County. The complaint in this action avers that the decedent, Marion K. Long, was the manager for the plaintiff in its Shiremanstown, *Cumberland County* office. Venue

of this action in Cumberland County is, therefore, clearly proper as being the county where the cause of action giving rise to the plaintiff's complaint arose. See Pa.R.C.P. 1006(a). Moreover, there is no requirement that an action be brought against a personal representative only in the county where letters have been issued. To the contrary, statutory provisions such as those found in 20 Pa.C.S. §3391, which provide that proceedings brought against a personal representative may be brought "in the county where his letters have been granted," expand the venue options available, rather than restricting them. See *Hooks v. Dubois,* 420 Pa. 65, 215 A.2d 631 (1966).

Another of the defendant's preliminary objections asserts that the defendant is entitled to a more specific pleading than one which simply alleges conversion of funds over a period of five years. We agree with the plaintiff that a complaint is sufficiently specific if it alleges that certain property was removed by the defendant from a specific location between two dates.

The third preliminary objection argued by the defendant was raised in part II of the preliminary objections, which reads as follows:

"(3) Plaintiff's complaint fails to allege fraud or other outrageous conduct of the type required to support an award of punitive damages against the defendant estate."

This narrow issue was briefed by the plaintiff in opposition to the defendant's preliminary objections. Without belaboring the matter, we agree with the plaintiffs that the conversion of $167,454.97 in depositors' funds by the defendant's decedent from a bank constitutes outrageous conduct which justifies a claim for punitive damages in this action.

While not expressly contemplated by its terms, this preliminary objection has also been construed, by both plaintiff and defendant, to encompass a broader question;

namely, whether punitive damages are recoverable from a decedent's estate *at all.*[1] We have not located any Pennsylvania authority with respect to the imposition of punitive damages on a decedent's estate. Generally speaking, most other jurisdictions which have considered the issue have not allowed punitive damages against a deceased tortfeasor's estate.[2] See e.g., *Sanchez v. Marquez,* 459 F.Supp. 359 (D. Colo. 1978). Many of these jurisdictions, in fact, have statutes prohibiting assessment of punitive damages against estates. See e.g., *Mervis v. Wolverton,* 211 So.2d 847 (Miss. 1968). The majority view reasons that since the deceased cannot be punished or deterred, there is no reason to assess damages. *Hayes v. Gill,* 390 S.W.2d 213, 216 (Tenn. 1965).

A minority of jurisdictions allows recovery of punitive damages against a decedent's estate. See e.g., *Perry v. Melton,* 299 S.E.2d 8 (W.Va. 1982); *Hofer v. Lavender,* 679 S.W.2d 470 (Tex. 1984). The *Perry* court reasoned that assessing punitive damages against a deceased tortfeasor's estate may serve to deter others. *Perry,* 299 S.E.2d at 13. In *Hofer,* punitive damages were allowed against an estate because the court reasoned that punitive damages exist not only to punish but also to reimburse a plaintiff's losses that are too remote to be covered by compensatory damages. *Hofer,* 679 S.W.2d at 474.

---

1. Defendant also preliminarily objects to the attempt to collect attorney's fees from the defendant decedent estate. The plaintiff concedes, in its brief, that a claim for attorney's fees is without legal basis. Thus, the preliminary objection in this regard will be sustained.

2. At present 22 jurisdictions do not allow punitive damages against decedents' estates while five jurisdictions permit it. Zitter, *Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor on Person Wronged,* Annotation, 30 A.L.R.4th 707 (1984).

We will adopt the position of the majority of juris-dictions for the various reasons advanced in *Lohr v. Byrd,* 522 So.2d 845 (Fla. 1988). In this case, a divided Florida Supreme Court examined the issue from both sides. A minority of three justices would permit the recovery of punitive damages from decedents' estates. They acknow-ledged that under English common law no damages of any kind were recoverable against a tortfeasor's estate. In Florida, however, as in Pennsylvania, a survival statute makes it clear that the death of the tortfeasor does not preclude the recovery of damages from his estate. Since the Florida statute makes no distinction between the re-covery of compensatory and punitive damages, the latter should be recoverable from the tortfeasor's estate, ac-cording to the minority. Further expanding upon their view, these justices reasoned that:

"The deterrence to others is totally unaffected by the death of the wrongdoer. In fact, the warning may be greater if one knows that even his death will not serve to insulate his estate from liability for his misconduct.... The suggestion that our ruling penalizes the heirs of de-cedent tortfeasor is beside the point because it is based on the artificial notion that it makes a difference when the tortfeasor dies. If he dies the day after a judgment for punitive damages entered against him, his heirs are surely penalized. Why should it be different if he dies the day before the judgment?" *Id.* at 848.

Despite these arguments advanced for the recovery of punitive damages, the majority of the Florida Supreme Court was persuaded that punitive damages ought not to be recoverable against a tortfeasor's estate. The ma-jority found persuasive the language of its own 5th District Court of Appeals which had stated:

"The punishment actually is inflicted upon his heirs. Separation of the 'punitive' and 'exemplary' aspects of

such awards is unjustified because general deterrence logically depends upon the perception of punishment suffered by the wrongdoer. When that punishment is diffused and unjustly inflicted upon the innocent, through a doctrine analogous to attainder, the deterrent effect is frustrated. It is unrealistic to suppose that such awards deter other prospective tortfeasors, especially if the criminal laws fail to do so. *Byrd v. Lohr,* 488 So.2d 138, 139 (Fla. Dist. Ct. App. 1986)." *Lohr v. Byrd,* 522 So.2d at 846.

The court then went on to expressly consider the argument that while death of the tortfeasor resulted in the absence of anyone to punish, punitive damages were nonetheless justified on a rationale of deterrence.

"Accepting this argument would result in our adopting a principle that would allow a decedent's widow and children to be placed on welfare for the decedent's wrong. Additionally, the view expressed ... would also punish innocent creditors of a decedent's estate....

"In *Carraway v. Revell,* 116 So.2d 16 (Fla. 1959), we discussed punitive damages and stated that they had 'as a basic purpose the punishment of the offender ... *not as compensation to the injured party, but as punishment.'* *Id.* at 20. If deterrence is justified in this instance, it would also be justified to require a decedent's family to pay a fine or be imprisoned for the decedent's criminal conduct. With the wrongdoer dead, there is no one to punish, and to punish the innocent ignores our basic philosophy of justice." *Lohr v. Byrd,* 522 So.2d at 847.

Our review of the authorities on this issue in various jurisdictions reveals that there are strong arguments on both sides of this question. As we have already noted, there is an absence of appellate authority in this Commonwealth. Having carefully considered the question,

we follow the majority of jurisdictions in refusing to permit actions for punitive damages against decedents' estates.

## ORDER

And now, July 30, 1992, the preliminary objections of the defendant to the plaintiff's claims for punitive damages and attorney's fees are sustained. The remaining preliminary objections of the defendant are dismissed.